Skeel, J.
The undisputed evidence shows that traffic at the intersection of Mohawk Place (which runs in a generally easterly direction from Central Parkway) with Central Parkway (which at this point runs in a generally northerly and southerly direction) is controlled by a series of traffic signal lights. Coming into and forming a part of this intersection from the west is Central Avenue, which upon reaching the west side of Central Parkway curves to the south and for a short distance at least runs southerly along and parallel to the west side of Central Parkway. The intersection through which east and west traffic must travel takes in both the width of Central Avenue, a narrow dividing strip between Central Avenue and Central Parkway, and the width of Central Parkway which provides six lanes of traffic, three for northbound traffic and three for southbound traffic. The testimony was that the distance from the place where eastbound traffic from Central Avenue, about to move across the intersection to enter Mohawk Place to the east, is required to stop so as not to block northbound and southbound traffic on Central Parkway is about 160 feet. There is an uphill grade for traffic moving easterly out of Central Avenue into the intersection leading to Mohawk Place. There is some evidence that the light directing north and south traffic on Central Parkway at this intersection is synchronized with other *312 intersection lights on Central Parkway in order to permit northbound and southbound traffic on the parkway to move without interference in the proper cycle at 25 miles an hour.
The plaintiff’s bus driver testified:
“Q. Will you explain to us in your own words what happened at Mohawk and the parkway? A. Well, the lights are synchronized on Central Parkway; if you drive at 25 miles an hour you make every light until you hit Harrison Avenue. 1 had the green light and here he come right out in front of me.”
The cycles for traffic through this intersection, starting with Central Parkway and running clockwise, are as follows:
Central Parkway traffic, northbound and southbound, is controlled by a “green” or “go” light for a 22-second interval, a “caution” light for three seconds, and a “red” light for 36 seconds; next, Central Avenue traffic is controlled by a “green” light that shows for traffic eastbound from Central and across the parkway for 14 seconds, simultaneously with a “light arrow” that controls traffic turning southward with the curve of Central Avenue southerly and parallel to the parkway, a “caution” light for three seconds, and a “red” light for 44 seconds; and, finally, Mohawk Place traffic, moving westward out of Mohawk, is controlled by a “green” light for 16 seconds, a “caution” light for three seconds, and a “red” light for 42 seconds.
This was the timing of the lights on September 24, 1951, and the point to be observed is that there is no interval between the time northbound and southbound traffic stops on Central Parkway and the time when Central Avenue eastbound traffic is directed to move into the intersection, hut that there is a 19-second interval between the time when eastbound traffic from Central Avenue is directed to stop and the time when northbound and southbound traffic may again proceed on Central Parkway so that vehicles can not lawfully enter the intersection at the same instant of time from Central Avenue going east and Central Parkway going north.
On the morning in question, the plaintiff’s bus was being driven north on Central Parkway. The driver testified that he was driving in the northbound lane closest to the center of the *313 parkway, behind a Plymouth automobile going in the same direction at 25 miles an hour; that the light turned from red to green when he was 100 feet from the intersection of the parkway and Mohawk Place; that the first time he saw the trolley bus, which was being driven east, was on the hill coming off Central Avenue (erroneously referred to as Mohawk) into the parkway, at which time plaintiff’s bus was 50 feet back of the intersection and still proceeding at a speed of 25 miles an hour; that the trolley bus was then going 10 to 15 miles an hour; that he thought it would stop and not crash the “red” light; that he then applied his brakes, his bus skidding 10 to 15 feet; that the left front side of his bus came into contact with or hit the right front doors of the trolley bus; that, when the collision occurred, the back end of his bus (43 feet long) was not yet in the intersection; that he swerved to the right to try to avoid the accident; and that both buses stopped parallel to each other headed east within the northeast corner of the intersection. Excerpts from plaintiff’s bus driver’s testimony, in addition to the above, are:
‘ ‘ Q. Where was this bus or trackless trolley when you first saw it, Jerry? A. He was there, that’s all. I saw him coming across Mohawk Place. I thought he was going to stop. I didn’t figure a city bus driver that drives all the time would run a red light. It happened so quick that’s all I can tell you.
( ( $ tÍ-
“Q. Now, what parts of your vehicles came together? A. Well, I hit him the first time at his right front door.
‘ ‘ Q. Where was the trolley bus when you first saw it, Jerry? A. He started to cross the south lane — you know, to my left.
“Q. Southbound traffic lane? A. Southbound traffic lane.
í i # * #
“Q. What is your best estimate, having been there yourself? A. It couldn’t have skidded over 10 or 15 feet; the bus never cleared the intersection when I got it stopped.
‘ ‘ Q. Then after skidding you hit the right side of the trolley bus at the front door? A. At the front door, that’s right.”
There is no evidence in the record that the defendant’s bus entered the intersection on the “red” signal light, as noted by *314 the trial judge, except the deduction of plaintiff’s bus driver, above quoted, who from his position as driver could not see the Central Avenue traffic signal light. The defendant’s driver testified that he was driving east on Central Avenue and had come to a stop back of a truck at the west side of this three-street intersection; that, when the light turned green, the truck proceeded right, continuing south on Central Avenue; that he proceeded into the intersection going east; that, as he entered Central Parkway and started across that part of the intersection, he saw the plaintiff’s bus 100 feet to the south of the intersection but. did not apply his brakes until he was near the safety island in the center of Central Parkway; and that he then applied his brakes and swerved to the left, when the collision took place. This witness’s testimony was clearly to the effect that, when he started into the intersection, the traffic light had just turned green for east traffic from Central Avenue across Central Parkway. There is likewise no dispute that the “green” light for east traffic succeeds in sequence the “green” light for north and south traffic. Such fact is a circumstance that reasonable minds might consider as giving support to the testimony of the defendant’s bus driver that he moved into the intersection from a standing position when the traffic light turned green in his favor. The defendant, at the conclusion of all the evidence, requested the court to give to the jury, among other charges, the following instruction before argument, as provided by subdivision (E) of Section 2315.01, Revised Code, which request was refused by the court and exception noted:
“I charge you as a matter of law that if you should find from the evidence in this case that the bus of the defendant, The Cincinnati Street Railway Company, had entered the intersection when the light governing its movement showed green, and before the bus of the plaintiff The Indianapolis & Southeastern Trailways Company had entered said intersection, that it was the duty of Jerry Sharp, the driver of the plaintiff’s bus, to yield the right of way to the defendant’s bus to permit it to proceed through the intersection and also to use ordinary care to avoid the collision.
“If you should find from the evidence in this case that the plaintiff’s driver, Jerry Sharp, did fail to yield the right of way, *315 if any, to the defendant’s bns, or did fail to exercise ordinary care to avoid the collision, nnder the circumstances I have stated in this charge, and that such failure was the sole proximate cause of the collision, then I charge you that the plaintiff cannot recover from the defendant on its petition and that your verdict should be for defendant, The Cincinnati Street Railway Company, on its cross-petition against the plaintiff, in the sum of $1,223.84.”
The court’s general charge on this subject was as follows:
“There is no claim, and no evidence in this case that the plaintiff’s vehicle was not proceeding on a green light, and did not enter the intersection on a green light. There is a claim, as I have stated to you, that the defendant’s vehicle did not enter the intersection on a green light, and I have already told you that if you find that to be true, that was negligence as a matter of law.
“The defendant claims that its bus entered that intersection on a green light. If you find and conclude that the bus of the defendant company did enter the intersection on a green light, then the court charges you that both of these vehicles were in the intersection lawfully, and when two vehicles are in an intersection lawfully, it is the duty of each driver to exercise ordinary care to avoid a collision.
“It frequently happens that two vehicles may be in an intersection both on a green light, and while a green light gives the driver of the car facing the green light the right to proceed, and the right of way, that does not mean an absolute right to go through and collide with anything else that happens to be in the intersection; but where they both enter the intersection on a green light and are both lawfully there, then it was the duty of both these drivers to exercise ordinary care. If you find that one or the other did not exercise ordinary care, and that they were both in the intersection lawfully, you would be warranted in finding against the one whom you found did not exercise ordinary care; and if you find that neither of them exercised ordinary care, then it would be your duty not to find a verdict for money in favor of either of them.”
*316 At the conclusion of the court’s general charge, the defendant made the following request:
“Mr. Beirne: With reference to the second sentence in that section on the traffic lights which Your Honor has ruled on in the special charges, I want the record to show a request by the defendant to supplement the charge to the effect that if they find the defendant’s bus was lawfully in the intersection at the time the light for the plaintiff’s bus was exhibited, it was the duty of the plaintiff’s driver to yield the right of way to the defendant’s bus, subject to the duty of both drivers to exercise ordinary care to avoid a collision.”
This request was refused.
There were only two witnesses to the operation of the respective buses — the plaintiff’s bus driver on behalf of the plaintiff, and the defendant’s bus driver on behalf of the defendant. The plaintiff’s bus driver’s testimony was presented to the jury through the reading of his deposition. Thereafter, the defendant objected and noted its exception to the refusal of the court to permit the deposition of Jerry Sharp, plaintiff’s bus driver, to go to the jury during its deliberations. At the conclusion of the taking of all the evidence in the case, the defendant moved for a directed verdict, which motion was overruled.
The defendant contends here that it was entitled to a judgment as a matter of law; and that the court committed error in not permitting the deposition of Jerry Sharp to be taken by the jury to the jury room during its deliberation on the case and in denying defendant’s special instructions on the right-of-way rule as defined by Section 4511.13, Revised Code. There is a further claim of error as to the general charge in not including the law on right of way and as to the refusal of the court, upon request, to augment such charge.
As to the first of these contentions, the record does not justify the claim. Issues of fact, requiring jury consideration, were clearly presented by the record. Accordingly, this contention is overruled.
The defendant’s second complaint in the order above named cannot be sustained upon this record. The reasons why the court refused to send the deposition to the jury room are not *317 contained in the record, and, therefore, it must be assumed that the court exercised its discretion properly.
In support of its position, defendant relies strongly on the early ease of Stites v. Admr. of McKibben, 2 Ohio St., 588, wherein the court indicated that the then prevailing and better practice, subject to exceptions, was to send depositions to the jury room for the jury’s consideration. However, in that case, there was no reversal of the judgment below because of the trial court’s refusal to do so, the reason for such refusal being undisclosed. Cf. New York, Chicago & St. Louis Rd. Co. v. Biermacher, 110 Ohio St., 173, 143 N. E., 570.
Nowadays, in the absence of some specific statute on the •abject, the prevailing view is either that it is error to deliver depositions to the jury on retirement or that such procedure rests in the sound discretion of the court. 53 American Jurisprudence, 664, Section 931; 89 Corpus Juris Secundum, 105, Trial, Section 466b.
Section 2315.01, Revised Code (Section 11420-1, General Code), provides only that all written charges and instructions shall be taken by the jurors in their retirement. And, of course, it is the common practice to send to the jury room the pleading and the exhibits admitted in evidence.
As to criminal cases, Section 2945.35, Revised Code (Section 13444-26, General Code), recites that, “upon retiring for deliberation, the jury, at the discretion of the court, may take with them all papers except depositions.”
There are probably good arguments for and against the practice of sending depositions to the jury room at the close of the trial in a civil action. However, we think the sounder and better rule is against such practice, leaving the matter in exceptional and unusual instances to the sound discretion of the trial court.
Not infrequently depositions contain legible testimony which has been stricken out as incompetent or otherwise objectionable, and it would seem unfair to permit the jury to take a witness into the jury room by way of his deposition, whereas other witnesses who testified at the trial are excluded.
In the case at bar, no error was committed by the trial *318 court in refusing defendant’s request to send the deposition to the jury room for the jury’s consideration.
As to the defendant’s claims of error based on the court’s failure to charge on the subject of right of way, subdivision (A) (2) of Section 4511.13, Revised Code (subdivision (a) 2 of Section 6307-13, General Code), in defining the rights and duties of traffic facing a signal light when it turns green, provides :
“All other traffic facing the signal except as provided under Sections 4511.36 (dealing with rules for turning at intersections) and 4511.58 (dealing with passing a standing streetcar) of the Revised Code may proceed straight through or turn right or left, unless a sign at such place prohibits either such turn. But such traffic shall yield the right of way to vehicles, streetcars, and trackless trolleys lawfully within the intersection and to pedestrians lawfully within the crosswalk at the time such signal is exhibited. ’ ’
“Right of way” is defined by subdivision (RR) of Section 4511.01, Revised Code (Section 6307-2, General Code), as follows :
“ ‘Right of way’ means the right of a vehicle, streetcar, trackless trolley, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or he is moving in preference to another vehicle, streetcar, trackless trolley, or pedestrian approaching from a different direction into its or his path. ’ ’
“Lawfully within the intersection” refers to traffic that has moved into the intersection upon the “green” light being displayed by the automatic traffic signal directing such traffic.
The right-of-way rule, as thus defined, when considered under the surrounding circumstances, requires no more than what would constitute ordinary care even if there was no statute. With only a three-second interval between the movement of cross traffic, one who admittedly enters on the change from red to green, in the exercise of due care, should not interfere with vehicles then lawfully there until they have cleared to a point of safety.
It is evident that the court’s general charge did not give *319 either party the benefit of the right-of-way rule afforded them by the statute, in the event the jury should find that either bus driver drove into the intersection lawfully before the other bus driver entered the intersection lawfully. It is also evident from the foregoing recital of the testimony of the witnesses that there is credible evidence tending to support the defendant’s contention that its bus did not enter the intersection until the “green” light was displayed directing eastbound traffic to proceed. Although it is true that, even with a preferential right as defined by the statute, drivers must be in the exercise of ordinary care at all times, yet what constitutes ordinary care will depend in large measure on who, if anyone, has the right of way and the right to rely on such right as well as who, if anyone, is bound to afford another such preferential right. Here, the plaintiff’s bus driver testified that, as he was approaching the intersection at 25 miles an hour, the light changed to green for him when plaintiff’s bus was 100 feet from the intersection. At 25 miles an hour, plaintiff’s bus was only three seconds away from the intersection and only one and one-half seconds away when, as he testified, he observed defendant’s bus for the first time, and it was then in the southbound lanes of the parkway. The defendant’s bus driver testified that he did not enter the intersection (from a standing position) until the light turned green in his favor to proceed east through the intersection. If the jury was to find this fact to be true, then 36 seconds would have to elapse before the signal turned green for north and south traffic on the parkway. Under these disputed facts, as testified to by the witness, it would have been physically impossible for the vehicles of both parties to enter the intersection on a “green” light at the same time.
Under these disputed questions of fact, the right of way was an important factor as affecting the rights of both parties, and it was clearly error not to advise the jury, when requested to do so, when and under what circumstances such right is bestowed upon one entering an intersection controlled by traffic lights. To say, in dealing with these disputed facts, that if two drivers enter on a “green” light neither is wrongfully there and each owes the other the obligation to exercise ordinary care to avoid injury to the other destroys any benefit bestowed by the *320 statute in defining when and under what circumstances the legal advantage of a right of way may be exercised.
The case of Welch, a Minor, v. Canton City Lines, Inc., 142 Ohio St., 166, 50 N. E. (2d), 343, is clearly distinguishable. In that case, a city bus going in an easterly direction on 9th Street in Canton entered an intersection on a “green” light when a collision occurred. However, the signal was defective in that there was no light showing or directing traffic moving north on Cleveland Avenue, a main thoroughfare intersecting 9th Street. After the truck (defendant’s) got into the intersection, the city bus, with the “green” light in its favor, entered, going-east, and the collision occurred. If the signal had not been operating at all, the truck, being to the right, under the provisions of Section 6310-28a, General Code (Section 4511.41, Revised Code), would have had the right of way. At the time of that collision (March 21, 1941), Section 6307-13, General Code (Section 4511.13, Revised Code), effective September 6, 1941, was not in force, but a city ordinance of Canton, containing substantially like provisions, was in effect. This court held that because of the circumstances both vehicles were rightfully in the intersection, and that a charge given the jury that the city bus had the right of way was erroneous. The failure of the trial court to charge on the right of way in the case at bar is, therefore, not supported by the law of the Welch case. ■
The plaintiff also cites, as supporting the refusal of the trial court to charge on the right of way as requested by the defendant, the case of Beers v. Zettelmeyer, Jr., a Minor, 155 Ohio St., 520, 99 N. E. (2d), 655. There the facts, which were in considerable dispute, there not being a complete bill of exceptions, seem to be that plaintiff was a passenger in a motor vehicle going south on East 100th Street in Cleveland and approaching Carnegie Avenue, a wide east and west thoroughfare with six lanes of traffic, four of which were for eastbound traffic in the evening rush hours. The plaintiff claimed that the traffic light turned to green for East 100th Street, and that, in an attempt to proceed through to the south, the automobile in which he was a passenger was held up by an automobile in an attempt to make a left-hand turn. When the way was cleared, the car in which plaintiff was riding started on through and was struck by defendant’s eastbound automobile moving in the most southerly *321 lane of Carnegie Avenue, with the traffic light then being green for easthonnd traffic. The defendant charged that the automobile in which plaintiff was a passenger came into Carnegie against the “red” signal. The single error which the plaintiff claimed was the giving of the requested charge after argument. He contended that the violation of Section 6307-13, General Code (Section 4511.13, Revised Code), constituted negligence per se. The court recognized the rule that, if the plaintiff entered Carnegie on a “green” light, he did have a preferential right to proceed through the intersection but must have done so in the exercise of due care. Paragraph one of the syllabus provides:
“The provisions of Section 6307-13, General Code, relating to the control of traffic at intersections, that ‘all * * * traffic facing the [green] signal * * * may proceed straight through or turn right or left unless a sign at such place prohibits such turn’ and that ‘such traffic shall yield the right of way to vehicles * * * lawfully within the intersection * * * at the time such signal is exhibited, ’ require each driver entering an intersection on a green light to use ordinary care to avoid injury to others lawfully within such intersection. ’ ’
The statute requiring one entering an intersection upon the change of the signal to “green” or “go” to yield the right of way to traffic then lawfully in the intersection does not mean that those having the preferential right can disregard the duty of exercising ordinary care under the circumstances. Also, the duty to yield the right of way, if the facts require it, is measured in terms of exercising ordinary care under the circumstances. This was the extent of the charge given before argument in the Zettelmeyer case, and as given was a correct statement of the law on that question. This, in fact, is the extent of the holding in that case. It is not in conflict with the case at bar. The court did not, by giving such charge, deprive one accorded the right of way as defined by the statute of the benefits thus bestowed. Where he drives into the intersection lawfully, such street user is accorded the right to move forward in the exercise of ordinary care in preference to traffic thereafter entering the intersection because of the change in the signal light. Ordinary care for such last-mentioned traffic also includes the need in the exercise of ordinary care to afford the preferential right to traffic *322 lawfully there. There must be reason applied to everything we do, including the control of our traffic conduct. To require traffic coming into an intersection upon the change to a “go” signal to allow cross traffic already lawfully there to clear is a necessary regulation, where automatic signals are used to control traffic. Any other rule would lead to utter confusion.
We must, therefore, conclude that the trial court was in error in refusing defendant’s special request to give special charge No. 1 and in refusing to amplify the general charge as requested. The plaintiff’s contention; that the statement, that, if the defendant entered on the “green” light, it had the preferential right (right of way) to proceed through and leave the intersection over the movement of plaintiff’s bus where plaintiff’s bus entered the intersection on the change of the signal to green, is not complete unless it includes the requirement that the driver exercising such right of way must have then been in the exercise of due care; is not well founded. Every driver of a motor vehicle on a public highway must at all times be vigilant and in the exercise of due care. This duty circumscribes every privilege of the highway. However, this does not mean that every request for a special instruction to the jury must include more than the one duty upon which the requesting party seeks instruction.
The plain and unambiguous meaning of subdivision (A) (2) of Section 4511.13, Revised Code, is that one who enters an intersection where traffic is controlled by an automatic electric signal, as defined by the statute, on a “green” light has the right (right of way) to proceed through such intersection (subject only to the obligation to exercise ordinary care under the circumstances) in preference to traffic that subsequently, in point of time but on the immediate succeeding change of the traffic signal light to “green” or “go” for cross traffic, enters such intersection and attempts to cross the path of the traffic lawfully within the intersection.
For the foregoing reasons, the judgment of the Court of Appeals is reversed and the cause remanded to the trial court for further proceedings.

Judgment reversed.

Taut, Matthias and Herbert, JJ., concur.
WeygaNdt, C. J., ZimmermaN and Bell, JJ., dissent.
*323 Skeel, J., of the Court of Appeals of the Eighth Appellate District, sitting by designation in the place and stead of Stewaet, J., pursuant to Section 2, Article IY of the Constitution.